## Saint Marys Machine Company v. Cook.

(Decided February 20, 1920.)

### Appeal from Breckinridge Circuit Court.

1. Compromise and Settlement—Relief.—When a claim is compromised, all rights growing out of it are merged in the compromise agreement and a suit may not thereafter be maintained on the matters compromised, but the relief must be obtained through an enforcement of the compromise agreement. But this rule does not prevail where the compromise agreement provides for a reinstatement of the original cause of action if the compromise agreement is not complied with.

2. Contracts—Suit for Breach of Contract.—Where machinery is purchased for a specific purpose, which purpose is known by the seller, the purchaser, in a suit for breach of the contract of sale by which the article purchased fails to do the work intended, may recover profits which he lost thereby, and which profits were within the reasonable contemplation of the parties.

3. Damages—Measure of Damages—Instructions.—An instruction should point out to the jury the legal method of assessing damages, and furnish a criterion by which it may be guided in arriving at its verdict; it is therefore error to direct the jury to return such a sum in damages as they might believe plaintiff lost by reason of the breach and which were within the reasonable contemplation of the parties.

HENRY D. MOORMAN and ERNEST WOODWARD for appellant.

JOHN P. HASWELL and D. C. WALLS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellee and plaintiff below, John Cook, was engaged in the grist milling business at Irvington, Kentucky, operating under the name of Irvington Mill & Elevator, and on May 28, 1915, he claims to have entered into a contract with appellant and defendant below, Saint Marys Machine Company, to purchase from it one "forty-brake horse power oil engine of the H. O. type Saint Marys, to operate on fuel oil as fuel, two-cylinder, single acting, four-stroke cycle." There was a clause in the contract saying: "The engine is guaranteed to operate satisfactorily on fuel oil or crude oil of a paraffine base of reasonable fluidity at ordinary temperature."

The engine was warranted for a period of twelve months, provided, however, it received the proper treatment and was given the proper care and attention (which, of course, included the use of proper fuel), and the seller agreed to remedy any defects in material or workmanship developed within twelve months after the shipment, provided it was given notice thereof and an opportunity to do so. The engine was installed in the mill about July 6 following the date of the contract. The total price agreed to be paid was $1,760.00, and in accordance with the terms of the contract the plaintiff paid ten per cent thereof at the time of its execution, and $324.00 when the machinery arrived, making a total payment of $500.00.

On September 15, 1915, this suit was brought by plaintiff alleging in his petition the execution of the contract, the warranty therein, as well as the information given to defendant at the time of the use intended to be made of the engine, and that it had altogether failed, with proper use and care, to pull the machinery necessary to operate the mill, and that it was not a forty horse power engine, nor did it do the work for which it was intended and which defendant represented it would do, and that plaintiff had lost customers, as well as profits which he would have saved if the engine had been sufficient to run the mill to its capacity, and he sought a recovery against defendant for the sum of $2,500.00 damages.

Before filing its answer the defendant filed what it styled a plea in abatement, in which it relied upon a contract entered into between the parties on October 25, 1915, after the bringing of the suit, wherein defendant

agreed to remove within fifty-two days thereafter the engine and to install another one in plaintiff's mill of sixty horse power, and the contract contained other stipulations not necessary to mention.

A reply to the plea in abatement was filed by plaintiff, in which he alleged that in the written compromise agreement there had been omitted, through fraud or mistake, a clause to the effect that unless defendant complied with its terms by installing the sixty horse power engine therein provided for within the fifty-two days, plaintiff was to have the right to continue the prosecution of his suit, which, in the meantime, was to remain upon the docket. We find no denial of this plea, in any form, in this record. But, however that may be, the court, upon proof heard, sustained the claim of plaintiff as to the omitted clause in the compromise contract, and accordingly held that the abatement plea could not prevail.

The answer to the merits of the petition contained a denial of its affirmative allegations, including the one that defendant executed to plaintiff the contract for the sale of the forty horse power engine complained of. The issues were made by appropriate pleadings, and upon trial there was a verdict for plaintiff for $1,500.00, upon which judgment was rendered, and defendant's motion for a new trial having been overruled, it prosecutes this appeal.

Three grounds for reversal are relied on in brief of appellant's counsel, they being (1) that a peremptory instruction should have been given to find for defendant; (2) error in the admission of evidence, and (3) error in the instructions given to the jury. The record contains so many motions and counter motions that we feel we can truthfully say with counsel in their brief:

"It must be conceded that the inherent complications in this case were confused, rather than clarified, by the multitude of motions and pleas, so that it is not surprising if a careful and able trial judge, like the one presiding below, erred in seeking to find the material question for decision."

But, with the assistance of counsel on one side only, and with diligent effort on our part in studying the record, we believe that we have been enabled to arrive at the justice of the matter.

Before considering either of the grounds relied on for reversal, we feel justified in saying that the evidence is

abundantly sufficient to show that the contract is one duly entered into by defendant; but, if not, there is no doubt but that it ratified the contract after its execution. The contract on behalf of the seller is subscribed: "The Saint Marys Machine Company by T. J. Turley Company, by L. R. Veatch," but defendant insists that it was a sale of the engine by Turley & Company, through its agent Veatch, neither of whom was authorized to or did, represent it. But, be that as it may, we find in the record a letter from defendant, written from its home office at Saint Marys, Ohio, seven days after the execution of the contract, and addressed to plaintiff, in which it is said:

"We wish to thank you very much for the order placed with our Mr. Veatch for one forty horse power twin H. O. engine. . . . Again thanking you for this business, and for the courtesies extended Mr. Veatch, we beg to remain, &c."

In the letter is also an acknowledgment of the check for $176.00, being ten per cent of the amount of the purchase price required to be paid by the contract. There are other letters, as well as actions and conduct disclosed by the record, which leave no doubt in our minds of the obligation of the defendant on the contract.

The (1) ground urged for a reversal—that of the refusal of the court to direct a verdict in favor of defendant—is insisted upon because it is claimed that the cause of action, if any, which plaintiff had, was one upon the compromise contract relied upon in the plea in abatement, and not one based on the original contract for the purchase of the engine, and we are cited to the cases of Albin Co. v. Firth Carpet Co., 24 Ky. Law Rep. 2432; Lanham v. L. & N. Ry. Co., 120 Ky. 352, and to 12 Corpus Juris. 337, as sustaining this contention.

The authorities referred to announce the familiar doctrine that where matters in dispute are compromised they are merged in the compromise agreement, and any suit thereafter brought must be upon the compromise agreement. We are not disposed to dispute the principle of law contended for, but counsel overlook the fact that there was injected into the compromise contract relied on herein a clause to the effect that if it was not complied with within fifty-two days after entering into it, this suit, founded on the original contract, should proceed as if no compromise had been made. Thus by the very terms

of the compromise contract it was substituted for the original one *conditionally* only, and the remedy for its breach was furnished by its own terms, which remedy was a continued prosecution of the original suit. With this view of the case it is clear that the defendant was not entitled to the peremptory instruction contended for, and the court properly overruled the motion made therefor.

Ground (2) relied on—the admission of incompetent testimony—is based upon the fact that the court admitted testimony showing that the engine failed to operate plaintiff's mill, while it is insisted that the only testimony admissible was whether the engine was a forty horse power engine and whether it was properly managed. If it were conceded that a forty horse power engine was insufficient to pull the machinery of plaintiff's plant, the position of counsel would be unassailable, but there was evidence to the effect that an engine of that power would be sufficient to pull all of the machinery of the mill, although the testimony shows that it had been previously operated by a sixty horse power engine. In this view of the case, if the machinery could have been operated by a forty horse power engine, and the particular one in controversy failed to do so, the complained of testimony was relevant.

Under the (3) ground relied on, the chief complaint is directed at instruction No. 1 given by the court at the instance of plaintiff with slight modification. That instruction, after submitting certain incorporated facts authorizing a finding for plaintiff—and of which no complaint is made—says:

"Then the jury shall find for the plaintiff such sum in damages as thereby naturally and reasonably followed from the failure which the plaintiff and defendant with their knowledge of the circumstances should reasonably have anticipated, if any, of said mill and elevator to run at the capacity in producing flour and meal which it would have run if said engine had operated satisfactorily when so operated and produced forty horse power not exceeding $2,500.00, the sum claimed in the petition."

The instruction is criticised because it fails to furnish any measure of damages or to fix any criterion by which the jury could be guided in arriving at its verdict. It is not claimed that in a suit for a breach of this character of contract such profits as might be realized from the

successful operation of the purchased machinery are not recoverable. On the contrary, profits which the purchaser could have realized had the article purchased measured up to the requirements of the contract, are recoverable in suits of this kind, since their loss is regarded as a proximate result of the breach of the contract, and they are regarded as being within the reasonable contemplation of the parties at the time of entering into the contract. Smith & Nixon Company v. Curry, 148 Ky. 165; Fairbanks, Morse & Company v. Carson-Muse Lumber Company, 160 Ky. 346, and Glover Machine Works v. Cooke-Jellico Coal Company, 173 Ky. 675.

In the last case referred to the controversy was over the sale of an engine to operate coal cars in hauling coal from the mine. The engine was alleged to be defective and not in compliance with the contract, and the opinion in enumerating the items of damage to which the purchaser would be entitled says:

"If it (the appellee) suffered loss in the output of coal, and which was reasonably within the contemplation of the parties, this, too, might be taken into consideration."

To the same effect are the other cases referred to, and if the court in this case had furnished to the jury, in the instruction complained of a proper criterion of recovery, there could be no complaint because the loss of profits to plaintiff by reason of the breach was included. Instead, however, the instruction left it to the jury to determine what damages were reasonably within the contemplation of the parties, and allowed it to return "such sum in damages as thereby naturally and reasonably followed from the failure."

Manifestly this left a wide field for speculation on the part of the jury, and similar instructions have been condemned in the cases of L. H. & St. L. R. R. Co. v. Roberts, 144 Ky. 822, Chicago, St. Louis & New Orleans Ry. Co. v. Hoover, 147 Ky. 35, and many others from this court which might be cited.

Moreover, we do not find the testimony so presented that the jury could arrive at what profits, if any, the plaintiff lost because of the failure of the engine to operate as contracted for. It is shown in the testimony that some days it would run reasonably well, while at other times it would not, and there is not sufficient testimony to enable the jury to determine with any precision the

amount of flour which the engine in its defective condition would or could produce, so as to ascertain the difference between what was produced and what might have been produced had the engine been as contracted for. Nor do we think it sufficiently appears from the evidence that plaintiff could or would have been able to dispose of the excess production at a profit. We find the record also somewhat confused as to the precise relief which plaintiff seeks. In his petition he does not tender back the engine to the defendant, and we are unable to tell whether he seeks damages upon the theory of his retaining the engine and paying the contract price therefor, or whether he seeks to cancel the balance of his indebtedness and recover what he has paid and damages beyond that sum. Upon a return of the case, if plaintiff should desire to do so, the pleading should be so amended as to make this matter clear.

The other instructions properly present the issues made by the testimony, and we find no fault in them.

For the errors indicated, the judgment must be and it is reversed, with directions to grant a new trial, and for proceedings consistent with this opinion.